STEPHEN ZIEGLER, PROSECUTOR, v. WILLIAM F. BURK ET AL.

Submitted March 21, 1912—Decided July 10, 1912.

A mere employe of a city under contract, embodied in a resolution passed before the adoption and the taking effect of the Civil Service act (*Comp. Stat., p.* 3795), terminable at the pleasure of the municipality, is subject to removal, according to the terms of his contract, at any time before that act becomes operative in such city.

On *certiorari.*

Before Justices BERGEN, VOORHEES and KALISCH.

For the prosecutor, *McCarter & English.*

For the defendants, *Charles E. Bird.*

The opinion of the court was delivered by

VOORHEES, J. The prosecutor was appointed assistant city treasurer of the city of Trenton, January 1st, 1910, by the treasurer, for a term of three years, and he continued in that position to the date of the passage of the resolutions which are sought to be reviewed by this writ.

The resolutions under inspection were introduced on the 13th day of December, 1911, at a meeting of the board of commissioners of the city of Trenton, which board had been established under the so-called Commission Government act (*Pamph. L.* 1911, *p.* 462), by force of which, it is admitted, the position held by the prosecutor became vacant.

We are not referred to any statute creating the office of assistant city treasurer, either the charter of Trenton (*Pamph. L.* 1874, *p.* 331) or any general law. The nearest approach to it is found in the seventeenth section of the charter (*Pamph. L.* 1874, *p.* 340), which authorizes the common council "from time to time to appoint such other subordinate officers as the common council deem necessary for the ordering and governing of the city and the execution of the powers and duties conferred and imposed upon the corporation by this act; the officers above named shall hold their several offices for one year, unless sooner removed and until their successors shall be appointed and qualified."

This does not authorize an appointment by the treasurer himself, but only by the common council, and then for a term of one year only, the incumbent to be removable at the pleasure of the council. And we take it, therefore, as he was appointed by the treasurer, that he was a mere employe of the city, engaged by the treasurer for the term of three years, the most favorable view for the prosecutor.

The *status* of the prosecutor, therefore, would seem to be determined by the case of *McAvoy* v. *Trenton,* 53 *Vroom* 101, viz., that he was never legally appointed to office as such, but became a mere employe of the city.

The resolutions above referred to, introduced on the 13th of December, were as follows:

"*Resolved,* That the services of Stephen Ziegler as assistant city treasurer be discontinued and ended on the 31st day of December instant."

The other resolution was as follows:

"WHEREAS, In the interest of economy in the administration of public affairs, a resolution has been introduced providing for the termination and ending of the services of Stephen Ziegler as assistant city treasurer; therefore

"*Resolved,* That the city clerk notify the said Ziegler of the introduction of said resolution, and that he make answer thereto, in writing, and file same with the city clerk on or before the nineteenth instant, stating any reasons he may deem proper why said resolution should not be adopted, or appear in person before the board at a meeting to be held on the twentieth inst., and be heard concerning the same."

The copies of these resolutions were sent to the prosecutor, and on the 19th of December he entered his formal protest against dismissal, arguing that because of the increase of work in the office, it was not true economy to dispense with one of the assistants, and that he had been advised that the proceeding was illegal.

These resolutions, notwithstanding, were regularly passed on the 20th of December, and a further resolution, as follows:

"*Resolved,* That the subordinate office or position of assistant city treasurer, now held by Stephen Ziegler, be and the same is hereby abolished; and

"*Resolved,* That this resolution shall take effect January 1st, 1912."

The prosecutor's contention is that by virtue of the so-called omnibus resolution of August 22d, 1911, set out in full in the opinion of *Salter* v. *Burk, ante p.* 152, the employment of Ziegler by the city treasurer was expressly affirmed by the commissioners, by this recognition of the prosecutor's occupation of the position, and by payment to him for services rendered, and that it was an employment in the language of

the resolution, "until the further order of the commission," and hence he became an employe for an unfixed term. This being so, it is further argued that the prosecutor became subject to the provisions of the Civil Service act. *Comp. Stat., p.* 3795.

In the case before us, it appears that the Civil Service act was adopted by the city of Trenton at the general election held November 7th, 1911; consequently, it became operative in the city of Trenton forty-five days thereafter (section 1), that is on the 22d day of December of that year.

It appears by stipulation in the case that the prosecutor had been placed on the classified service list of the city by the board of civil service commissioners of New Jersey, but the date when he had been so placed is not disclosed. Presumably, it could not have been before the Civil Service act took effect, viz., December 22d, 1911. Being an employe, therefore, under the contract embodied in the omnibus resolution passed before the adoption of or the taking effect of the Civil Service act, he was subject to removal, according to the terms of his contract, at any time before that act became operative.

But aside from that aspect of the case, there was a resolution whereby the position of the assistant city treasurer was abolished by the commission government. The right to abolish a position in the interest of economy is recognized by the twenty-third section of the act which provides "whenever any permanent office or position in the classified service is abolished or made unnecessary, the person legally holding such office shall be deemed to be suspended without pay and the name of such person * * * be placed by the commission on a special list."

The right so to abolish this office or position is not controverted by the prosecutor, provided it be done in good faith (*Beirne* v. *Jersey City,* 31 *Vroom* 109; *Sutherland* v. *Jersey City,* 32 *Id.* 436; *Paddock* v. *Hudson Tax Board,* 53 *Id.* 360), but he urges that in the present case it was not done *bona fide,* and seeks to justify that position by his own testimony, that, in his opinion, the work of the office to which he is attached

cannot be properly carried on by a diminished force, inasmuch as the duties of the office have considerably increased, with the growth of the city.

We think, however, the effort of the commission to cut out what in their judgment are superfluous employes so rendered by systematizing the work, and doing away with unnecessary operations and in other ways making for economy of time and effort appears to be an honest attempt to economize. An inference of bad faith cannot be drawn from the prosecutor's contrary opinion based upon the previous conditions with which he was familiar. The testimony shows a reconstruction of the department, whereby duties have been combined, work simplified and reduced to less complicated system, whereby a less number of employes are required. Of the working of this system the prosecutor has no knowledge.

There is, however, no reason assigned which involves the *bona fides* of this action of the board of commissioners in abolishing the prosecutor's position.

The resolutions under review will be affirmed.