FRANK H. FREDERICKS, APPELLEE, v. BOARD OF HEALTH OF THE TOWN OF WEST HOBOKEN, APPELLANT.

Submitted December 7, 1911—Decided March 5, 1912.

1. Acceptance of an appointment to public office does not create a contract.
2. An office is a place in a governmental system created or recognized by the law of the state which, either directly or by delegated authority, assigns to the incumbent thereof the continuous performance of certain permanent public duties.
3. A sanitary inspector appointed by a local board of health under the power conferred by the thirty-first section of the Health act of 1887 (*Pamph. L.*, p. 94) is the incumbent of an office.
4. Ordinances passed by virtue of a delegation of legislative power have, within their respective spheres, the force of general laws and are operative until repealed, but where an administrative right only is conferred the salary attached by a local body to an office to be filled by it may be reduced during the term of its appointee.

On appeal.

By section 31 of the Board of Health act of 1887 (*Pamph. L., p.* 94), the board of health of the town of West Hoboken was required to appoint an inspector whose general duties are outlined in section 5 of the act. On March 28th, 1910, Frank A. Fredericks was appointed sanitary inspector for the term of three years at a salary of $1,500 a year, which was paid to him up to January 31st, 1911. On January 30th, 1911, the board resolved that the salary of sanitary inspector be fixed at $1,000 a year. Fredericks, having served as inspector during the months of February, March and April, brought an action for three months' salary at $125 a month and recovered a judgment therefor in the Hoboken District Court upon the determination of the judge who heard the case without a jury that "there existed upon his acceptance a contractual relation that cannot subsequently be vitiated by the conduct of one of the parties."

From this judgment the board of health has appealed, specifying as grounds for reversal that the court was in error in

finding that there existed a contractual relation between the plaintiff and defendant and because the court determined that the resolution of January, 1910, was inoperative to reduce the plaintiff's salary.

Before Justices GARRISON, PARKER and BERGEN.

For the appellant, *Randolph Perkins.*

For the appellee, *John J. Fallon.*

The opinion of the court was delivered by

GARRISON, J. If the appellee held an office the District Court erred in deciding that his acceptance thereof established a contractual relation. *Hoboken* v. *Gear,* 3 *Dutcher* 265.

The first question therefore is whether or not the inspector appointed by a local board of health is the incumbent of an office. The courts of this state have frequently been called upon to decide what an office was and to distinguish "an office" from "a position," as well as from a mere employment. From these decisions the following definition of an office may be deduced:

An office is a place in a governmental system created or recognized by the law of the state which, either directly or by delegated authority, assigns to the incumbent thereof the continuous performance of certain permanent public duties.

Illustrations are:

The keeper of the common jail. *Bownes* v. *Meehan,* 16 *Vroom* 189.

County collector. *Smith* v. *Regan,* 25 *Vroom* 167.

Superintendent of buildings. *Townsend* v. *Boughner,* 26 *Vroom* 380.

Receiver of taxes. *Uffert* v. *Vogt,* 36 *Vroom* 377.

But not a clerk in a city department. *McAvoy* v. *Trenton, ante p.* 101.

A position is analogous to an office, in that the duties that pertain to it are permanent and certain, but it differs from an office, in that its duties may be non-governmental and not assigned to it by any public law of the state.

Illustrations:

A bridge tender. *Lewis* v. *Jersey City*, 22 *Vroom* 240.

A guard in county jail. *Cavenaugh* v. *Essex*, 29 *Vroom* 531.

A janitor of a court house. *Daily* v. *Essex*, 29 *Vroom* 319; *Peterson* v. *Salem*, 34 *Id.* 59.

A deputy warden of an almshouse. *Stewart* v. *Hudson*, 32 *Vroom* 117.

A keeper of a reservoir. *Hardy* v. *Orange*, 32 *Vroom* 620.

A janitor of a police station. *Dolan* v. *Orange*, 41 *Vroom* 106.

An "office janitor" of a city hall. *Hart* v. *Newark*, 51 *Vroom* 600.

An employment differs from both an office and a position, in that its duties, which are non-governmental, are neither certain nor permanent. *McLaughlin* v. *Jersey City*, 22 *Vroom* 240; *Evans* v. *Hudson*, 24 *Id.* 585; *Kreigh* v. *Hudson*, 33 *Id.* 178.

It is clear from the illustrations afforded by the cases cited and from the definitions derived from the decisions themselves that the appellee held either an office or a position, and it is equally clear that as between these two he held an office. Boards of health are governmental agencies by which the Police law of the state is locally exerted. The inspectors appointed under these state laws perform therefore public duties that are certain, continuous and permanent, and that are derived from and constitute a direct participation in a governmental system created or recognized by the law of the state. The place in question therefore fulfills all of the terms of the definition of an office and is, as a glance at the illustrations will show, more closely assimilated to the examples of an office than to mere positions such as janitors, bridge tenders and the like. The illustration that most nearly fits a sanitary inspector is that of superintendent of buildings, such as was dealt with in *Townsend* v. *Boughner, supra.* It is true that the distinction between an office and a position was not dealt with by Chief Justice Beasley in his opinion, but the action was *quo warranto,* which applies only to an office.

Concluding, as we do, that the appellee held an office, the judgment in his favor cannot be sustained upon the ground that he had a contract with the board of health as to the amount of his compensation. *Gear* v. *Hoboken, supra.*

It is necessary therefore to consider whether the salary of the office remained at $1,500, notwithstanding the resolution of the board reducing it to $1,000. The board was at this time a *de facto* body, hence, the only question before us is whether or not the salary of the office could be changed during the term for which the incumbent entered. The form of the reduction is not challenged. In the absence of any constitutional interdict the question is solely one of statutory power, the answer to which depends upon whether the authority conferred upon local boards of health by the thirty-first section of the act was a grant of municipal control, *i. e.*, a law-making power, or only a grant of the right of administration. Of the former, *Bradshaw* v. *Camden,* 10 *Vroom* 416, and *Bohan* v. *Weehawken,* 36 *Id.* 490, are examples, while the latter is illustrated by *Mathis* v. *Rose,* 35 *Id.* 45, and *Uffert* v. *Vogt,* 36 *Id.* 621. The very practical distinction, as was pointed out in Bohan *v.* Wechawken, is that where the law-making power is conferred action taken thereunder has the force of a general law that is operative until repealed, whereas the grant of an administrative right only carries with it no such incident of the legislative function. In view of this distinction it is clear that section 31 of the act before us confers the right of administration only, and hence was subject to alteration without formal repeal.

There being therefore neither constitutional nor statutory barrier the resolution of the board reducing the salary attached to the office of inspector was valid and operative, being clearly within the administrative and economic discretion of the board. *Newark* v. *Lyon,* 24 *Vroom* 632; *Beirne* v. *Jersey City,* 31 *Id.* 109.

The appellee had therefore neither a contract nor an official salary to support the judgment that was rendered in his favor by the court below which must consequently be reversed.

In reaching this conclusion upon the determinations of law

presented by this appeal no attempt has been made to pass upon the respective claims to legality of the two rival boards that for a time co-existed or to unravel the tangle that resulted from, what seems to have been, their amalgamation. The *de jure* character of these bodies can be determined only upon a direct attack. Some of the questions sought to be raised could doubtlessly be settled upon *quo warranto;* some perhaps by no form of procedure known to the law. In this state of affairs we have laid hold of such acts of admittedly *de facto* bodies as presented the legal questions the parties have tried and that the District Court had the jurisdictional capacity to determine.

The judgment brought up by this appeal is reversed.